**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Climmie JONES, Jr., Defendant–
Appellant.**

No. 97–5222.

United States Court of Appeals,
Sixth Circuit.

Argued April 30, 1998.

Decided Nov. 6, 1998.

971

Lawrence W. Moon, Jr. (argued and briefed), Asst. U.S.Atty., Office of U.S.Atty., Nashville, TN, for Plaintiff–Appellee.

Climmie Jones, Jr. (briefed), Atlanta, GA, David L. Cooper (argued and briefed), Cannon, Cannon & Cooper, Goodlettsville, TN, for Defendant–Appellant.

Before: JONES, MOORE, and COLE, Circuit Judges.

## OPINION

COLE, Circuit Judge.

This direct criminal appeal from various drug and weapons convictions asserts multiple points of error. Defendant–Appellant Climmie Jones, Jr. contends that the district court erred: (1) by denying his motion to suppress evidence seized from his residence pursuant to a search warrant; (2) by denying his motion to dismiss the indictment based on a selective prosecution argument or, alternatively, by denying his motion for discovery on that issue; (3) by denying his motion for judgment of acquittal on the basis of insufficient evidence; (4) by allowing the Govern-

ment to prove his prior felony conviction at trial when he offered to stipulate to the conviction; (5) by enhancing his base offense level by two levels for the possession of a stolen weapon; and (6) by enhancing his base offense level by two levels for obstruction of justice. In *pro se* briefing, Jones raises additional issues, all of which involve settled law, except for one issue involving the amendment to U.S.S.G. § 2D1.1, which added a definition of "cocaine base." For the reasons that follow, we affirm in part and reverse in part, and remand for further proceedings in accordance with this opinion.

## FACTS AND PROCEEDINGS BELOW

On March 20, 1996, a superseding twenty-one count indictment was filed against Jones (as well as two co-defendants), charging him with: conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846 (Count 1); distribution and possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts 2, 4, 6, 7, 9, 11, 13, 15, 17 and 18); distribution and possession with intent to distribute cocaine and cocaine base within 1000 feet of school property, in violation of 21 U.S.C. § 860 and 18 U.S.C. § 2 (Counts 3, 5, 8, 10, 12, 14, 16 and 19); possession of a sawed-off shotgun, in violation of 26 U.S.C. § 5861(d) (Count 20); and possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 21).

In September of 1996, the district court conducted a hearing on Jones's motion to dismiss the indictment based on selective prosecution and on his motion to suppress evidence. The district court denied the motion to dismiss and, in addition, denied the motion to suppress evidence on all grounds except with respect to certain jewelry and "white tablets," for which it granted the motion.[1]

Later that month, the Government rejected Jones's offer to stipulate to the fact of a prior felony conviction in lieu of the admis-

sion of the prior conviction into evidence at trial. Following a jury trial in late October of 1996, Jones was convicted on all the charged counts. In January of 1997, the district court denied Jones's motion for a new trial. The district court additionally denied the Government's motion to dismiss without prejudice count 21 (the felon-in-possession count).

Also in early 1997, the district court conducted a sentencing hearing. The district court denied the Government's motion for an upward departure from the Sentencing Guidelines' prescribed range and sentenced Jones to 262 months of imprisonment, ten years of supervised release and a $1050.00 special assessment. Jones subsequently appealed to this court.

## DISCUSSION

### A. Suppression of Evidence

Jones contends that the district court erred by denying his motion to suppress the evidence that was seized from his residence pursuant to a search warrant. He argues that the affidavit supporting the warrant failed to establish probable cause that there would be evidence of crack cocaine trafficking at the residence.

■ When reviewing a denial of a motion to suppress evidence, we generally review the district court's findings of fact for clear error and its conclusions of law de novo. *See United States v. Jenkins*, 124 F.3d 768, 772–73 (6th Cir.1997). When so doing, we must review the evidence in a light most likely to support the district court's decision. *Id.* When we review the propriety of a search warrant, we consider the evidence that the issuing magistrate had before him only "to ensure that [he] ha[d] a substantial basis ... for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (citation and quotation omitted). "[C]ourts should not undertake a de novo review of the sufficiency of an affidavit, nor should they invalidate [a]

---

1. The district court was not satisfied that these suppressed items were found in plain view or

were of an incriminating nature.

warrant by interpreting [an] affidavit in a hypertechnical, rather than a common sense manner.... Rather, the [issuing magistrate]'s probable cause determination should be afforded great deference by the reviewing court." *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir.1991) (citation and quotations omitted).

In *Gates,* the Supreme Court adopted a totality of the circumstances test to determine whether an issuing magistrate appropriately issued a search warrant. Under that test,

> [t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates,* 462 U.S. at 238, 103 S.Ct. 2317. The Court explained that "probable cause requires only a probability or substantial chance of criminal activity, *not an actual showing* of criminal activity." *Id.* at 243–44 n. 13, 103 S.Ct. 2317 (emphasis added).

Jones contends that the search of his residence was based on a warrant which failed to establish probable cause of a nexus between crack cocaine trafficking and the house searched. Jones's argument is that neither the confidential informant nor the law enforcement officer, the individuals who offered information by affidavit to the issuing magistrate, had been inside the house and, therefore, could not have possibly observed any evidence of illegal drug activity therein. Jones contends that the affidavit was misleading because it referred to "said premises"[2] which suggested that the confidential informant and the law enforcement officer had been inside the house, although the alleged events actually had taken place in the driveway or in Jones's car. The search of the house ultimately revealed cocaine and drug paraphernalia as well as the two firearms that served as the basis for Jones's

convictions on counts 20 and 21 (possession of a sawed-off shotgun and felon-in-possession of a firearm).

The affidavit which supported the search warrant in this case contained the following relevant and supportive items of information: (1) a confidential informant had made at least six drug purchases, recorded by law enforcement officials, from Jones and a co-defendant; (2) on two occasions when the confidential informant was on the premises of Jones's residence while being monitored by audio surveillance, law enforcement officials heard a drug transaction; (3) in the 72 hours preceding the affidavit, the confidential informant was on the premises and observed Jones and a co-defendant in possession of a quantity of cocaine for the purpose of unlawful distribution.

■ The district court did not err by finding that such information provided probable cause to support the warrant. Knowledge of illegal drug activities, obtained by law enforcement officials through a confidential informant and independent surveillance, supports a district court's finding of probable cause to support the issuance of a warrant. *See United States v. Sonagere,* 30 F.3d 51, 53 (6th Cir.1994) (identifying two factors as critical to the determination that a confidential informant's tip provides a substantial basis for finding probable cause: (1) an explicit and detailed first-hand description of the wrongdoing, and (2) corroboration of the tip by independent investigation). There is no requirement of prior, actual observation of all the items listed in a search warrant. *See United States v. Wright,* 16 F.3d 1429, 1438 (6th Cir.1994) (upholding warrant despite fact that police only observed "innocent" activities); *United States v. Lamon,* 930 F.2d 1183, 1188–89 (7th Cir.1991) (upholding warrant despite absence of observation of drugs or paraphernalia in automobile to be searched).

In this case, the fact that the incidents referred to in the affidavits took place on the premises rather than inside the house does

**2.** The search warrant was for the "premises" at 3515 Old Nashville Highway, defined as "all buildings, outbuildings, and vehicles under the

control of Climmie and Marion Jones and upon said premises [at 3515 Old Nashville Highway]."

not invalidate the search of the house. The recited statements supporting the search warrant and the fact that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live," *Lamon,* 930 F.2d at 1188 (quotation omitted), support a finding of probable cause to support the issuance of the warrant. *See Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) ("A 'practical nontechnical' probability that incriminating evidence is involved is all that is required."). Accordingly, we affirm the district court on this issue.

## B. Selective Prosecution Claim

■ Jones contends that the district court erred in denying his motion to dismiss the indictment because of alleged race-based selective prosecution. In the alternative, Jones argues that the district court erred by denying his motion to compel discovery.[3] The district court held a hearing and concluded that Jones had not established a selective prosecution claim, nor entitlement to discovery on the issue. Jones argues on appeal that he was prosecuted based on his race, citing to the Government's decision to prosecute him in federal court instead of state court and the egregious and unprofessional conduct of the arresting local law enforcement officers, Kerry Nelson and Terry Spence.

The conduct of officers Nelson and Spence was undeniably shameful. Prior to the planned arrest of Jones and his wife, the two officers had t-shirts made with Jones's picture emblazoned on the front accompanied by the printed words, "See ya, wouldn't want to be ya" above the picture, and below, "going back to prison." On the back of the t-

shirts appeared a picture of Jones's wife, a co-defendant, with the words, "wait on me, Slow,[4] I am coming, too." The two officers were wearing the t-shirts when they arrested Jones in August of 1995. Over one year later, while on a Caribbean cruise, Officer Spence mailed a postcard purchased in Jamaica to Jones while he was in custody awaiting trial. Jones regards Spence's mailing of the postcard, that pictured a black woman with a basket of bananas on her head, as a racial insult. On the postcard, postmarked from Cozumel, Mexico on October 24, 1996, appeared the following handwritten message:

> Climmie, Slow Motion. What's up? Haven't talked to you since you were in court and lost all your motions. Sorry, but life goes on. Just wanted to drop you a line and let you know that Cozumel, Mexico is beautiful. I'm on vacation and I'll be back Monday for trial, and chances are good you're going to jail for a long time. See ya, Officer Spence.

Spence testified that he sent the postcard to relieve "stress I was feeling while I was on the cruise." Regarding the t-shirts, Spence explained that "It was just—I took pride in arresting [Jones]." Nelson also testified that he wore the t-shirt to demonstrate "a great deal of pride in Mr. Jones's arrest."

In addition, there was testimony at the hearing with respect to Jones's claim that local law enforcement agents improperly referred his case for federal prosecution based on his race. The testimony showed that the Murfreesboro Police Department had referred fourteen defendants, including Jones and his Caucasian co-defendant, Donnie Bill-

---

3. Jones sought through discovery: (1) names and arrest reports from the Rutherford County Sheriff's Department for the past five years which concern non-African-American individuals charged with felonious possession or distribution of crack cocaine; (2) names and arrest records from the Drug Enforcement Agency office in Nashville that concern non-African-American individuals charged with felonious possession or distribution of crack cocaine; and (3) the names and docket numbers maintained by the U.S. Attorney's office in Nashville for the past five years which concern non-African-American individuals charged with felonious possession or distribution of crack cocaine.

Because a selective prosecution claim is not a defense to the merits of a criminal charge but, instead, an independent assertion of misconduct, discovery is not available pursuant to Fed. R.Crim.P. 16. *See United States v. Armstrong,* 517 U.S. 456, 463, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). Thus, a defendant must make a showing that he is entitled to discovery. *See id.* at 464, 116 S.Ct. 1480.

4. One of the appellant's aliases, short for another alias, "Slow Motion."

ings, for federal prosecution in the preceding five years. Of those fourteen defendants, four were African–American, two were Columbian, two were Lebanese, one was Israeli[5] and five were Caucasian. Of the cases referred for federal prosecution in the preceding five years, however, only Jones's and Billings's prosecutions involved crack cocaine. Further, Jones presented evidence of eight non-African-American defendants prosecuted for crack cocaine offenses who were not referred for federal prosecution.

Following the hearing, the district court found no evidence of a discriminatory motive or intent on the part of law enforcement personnel in investigating or prosecuting the case. The district court found that the primary reason that Jones was prosecuted in federal court was the danger that he posed to the community generally and law enforcement specifically, based on his previous arrest for drug trafficking and threats he had made to police officers.

Although denying Jones's selective prosecution claim and his request for discovery on the claim, the district court expressed its outrage at the conduct of the local law enforcement officers.

[I]t is, in my view, highly unprofessional .... the Murfreesboro and Rutherford County police officers need to quit acting like children and act like grownups.

*     *     *

[T]he fact that this police department would wear these t-shirts with Mr. Jones' face on them and his wife's face on them and send these kind of postcards, in my view, is absolutely outrageous, unprofessional, childish and generally disgusting, and without thinking of the dignity of the process or people, that is just not the way professional law enforcement people operate. The postcard particularly upsets me .... we had a suppression hearing, we had some evidence about the t-shirts, every-

body knew, I believe, that that was, in the least embarrassing, at the most could affect the case and generally was, I think, not a high point for the government to say that lightly. Then Mr. Spence after the suppression hearing and after knowing all that mails this postcard. So, it is, in my mind, just unbelievable that an adult would do that.

*     *     *

I wanted to put my thoughts on the record so that the mayor or county executive or chief of police or anyone who should see fit for reviewing my comments and take appropriate action if necessary and if warranted.[6]

Jones now asks this court to reverse the district court's denial of his selective prosecution claim and dismiss the indictment. Alternatively, he asks that we remand the case to compel discovery on the issue.

■■■■ Jones urges us to consider the postcard, t-shirts, his referral for federal prosecution and the fact that his Caucasian co-defendant was not originally a target of the investigation as *prima facie* evidence of selective prosecution. Because the determination of the merits of a selective prosecution claim is essentially a factual inquiry, we review such a determination for clear error. *See United States v. Bauer,* 84 F.3d 1549, 1560 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 267, 136 L.Ed.2d 191 (1996), —— U.S. ——, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997), —— U.S. ——, 117 S.Ct. 992, 136 L.Ed.2d 872 (1997), —— U.S. ——, 117 S.Ct. 995, 136 L.Ed.2d 875 (1997); *United States v. Parham,* 16 F.3d 844, 846 (8th Cir.1994). To prevail on a selective prosecution claim, a defendant must show that the federal prosecutorial policy had both a discriminatory effect and a discriminatory intent. *See United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d

---

5. The testimony presented these defendants only in terms of countries of origin and did not suggest whether or not these defendants were American citizens; no additional information was offered.

6. As of oral argument, no action had been taken. The Murfreesboro Police Department's failure to

reprimand or otherwise sanction the two officers is troubling, to say the least. The commanding officer, Major Mickey McCullough, testified that he did not see anything wrong with the t-shirts. "It was a way for the officers to celebrate spending months and sometimes years in planning and work."

687 (1996). To establish discriminatory intent in a case alleging selective prosecution based on race, a claimant must show that the prosecutorial policy was motivated by racial animus; to establish discriminatory effect, the claimant must demonstrate that similarly situated individuals of a different race were not similarly prosecuted. *Id.* (noting that the requirements for such a claim draw on "ordinary equal protection standards" (citation omitted)).

■ We conclude that Jones has established a *prima facie* case of discriminatory intent. The conduct of Officers Spence and Nelson was not only outrageous and unprofessional, but also racially motivated. Although there were three individuals involved in this case (Jones, his wife and co-defendant Donnie Billings), only Jones and his wife were African–American. The officers made t-shirts for only those two. Moreover, any argument premised on the fact that Billings was not as involved in the crime as Jones fails, because Jones's wife was no more involved than Billings and yet a t-shirt was made with her picture. We also reject the officers' purported reason for making the t-shirts—that they took pride in the arrests. For some reason, this pride manifested itself in a way that the department had never done before, because this was the first time that such t-shirts were present at an arrest or a search scene.

Additionally, Spence's mailing of the postcard evidences racial animus. Even if we were to discount the obvious impropriety of mailing a postcard, any postcard, to a criminal defendant awaiting trial, we could not so easily disregard the nature of the postcard mailed to Jones. The officer sent to an African–American man a postcard of an African–American woman with bananas on her head, and did not choose any other available postcards such as the sunset or the beach.

Jones testified at his sentencing hearing that to him the postcard meant "nigger, you're a monkey with bananas." Given the history of racial stereotypes against African–Americans and the prevalent one of African–Americans as animals or monkeys, it is a reasonable—perhaps even an obvious—conclusion that Spence intended the racial insult that Jones perceived in receiving the postcard. In addition, Officer Spence's testimony that he sent the postcard to relieve stress is irrational, if not incredulous. It is far more likely that Spence sent the postcard to disparage Jones and his wife on the basis of their race. Accordingly, we believe that Jones has made the requisite showing of discriminatory intent.[7]

The second prong of a selective prosecution claim—discriminatory effect—creates a greater challenge for Jones. As we have stated, to establish discriminatory effect, a defendant must show that similarly situated individuals of a different race were not similarly prosecuted. *See Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480. The evidence that Jones has presented to this point does not establish that law enforcement failed to refer similarly situated non-African-Americans for federal prosecution. Accordingly, Jones thus far has not established a *prima facie* case of discriminatory effect.

■ Jones argues in the alternative that the district court erred by denying his request for discovery on his selective prosecution claim because, even if Jones's evidence is not enough to establish a *prima facie* case at this point, he has set forth "some evidence" warranting discovery. Jones asserts that discovery will enable him to establish a *prima facie* case of discriminatory effect. We review the denial of a motion for discovery regarding a selective prosecution claim for an abuse of discretion. *See, e.g., United States*

---

7. We cannot emphasize enough our sense of outrage regarding officers Spence's and Nelson's egregious actions. Law enforcement officials are expected to enforce the law, and their satisfaction in apprehending a suspect, especially one with a criminal background and history of confrontations with such officials, comes as no surprise. However, law enforcement officials must act with integrity, professionalism and fairness. Officers such as Spence and Nelson, whose be-

havior does not even minimally reflect these attributes, diminish public confidence in law enforcement. The taunting of a defendant by the mailing of a racially charged postcard, and the wearing of custom-made shirts with inappropriate personalized language and pictures, undermines the integrity of our legal system and indeed a defendant's confidence that his case will be handled justly.

*v. Quinn,* 123 F.3d 1415, 1425 (11th Cir. 1997), *cert. denied,* — U.S. —, 118 S.Ct. 1203, 140 L.Ed.2d 331 (1998); *United States v. Candia–Veleta,* 104 F.3d 243, 246 (9th Cir.1996); *see also generally Sierra Club v. Slater,* 120 F.3d 623, 638 (6th Cir.1997).

■ In *Armstrong,* the Supreme Court stated that in order for a defendant to obtain discovery in a selective prosecution case, there must be a showing of "some evidence tending to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent." 517 U.S. at 468, 116 S.Ct. at 1488 (quotation and citation omitted). As we have stated, Jones has established a showing of discriminatory intent. With respect to discriminatory effect, we believe that Jones has set forth some evidence "tending to show the existence of discriminatory effect," despite the fact that Jones was unable to establish a prima facie case of discriminatory effect on the merits of his selective prosecution claim. Obviously, a defendant need not prove his case in order to justify discovery on an issue.

Jones has presented evidence that law enforcement referred only him and his co-defendant Billings for a federal prosecution that involved crack cocaine, and failed to refer for federal prosecution eight non-African-Americans who were arrested and prosecuted for crack cocaine. The harshness of the crack cocaine guidelines in federal court is certainly a factor that may have been considered in referring defendants for federal prosecution. The fact that law enforcement never considered foregoing the prosecution of Billings, Jones's white co-defendant, in federal court does not change our analysis. It would have been beyond foolish for law enforcement to have done such a thing, considering that Jones's and Billings's cases involved the same events.

■ Accordingly, Jones has set forth "some evidence" tending to show the existence of discriminatory effect that warrants discovery on his selective prosecution claim. *See id.* Thus, the district court abused its

discretion in denying Jones's request for discovery. We therefore remand the case to the district court to compel discovery on Jones's selective prosecution claim. If Jones is able to obtain evidence that establishes a *prima facie* case of discriminatory effect, Jones may renew his motion to dismiss the indictment.[8]

## C. *Old Chief* Error

■ Jones also argues that the district court erred by allowing the Government to introduce at trial a copy of the underlying judgment of a previous conviction upon which the felon-in-possession charge (Count 21) was based, even though Jones offered to stipulate to that element of the charged offense. We review for an abuse of discretion a district court's decision to reject a defendant's offer to stipulate that he was a convicted felon and instead admit the record of the prior conviction. *See Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 647, 136 L.Ed.2d 574 (1997); *United States v. Daniel,* 134 F.3d 1259, 1262 (6th Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 83, — L.Ed.2d — (U.S. Oct. 5, 1998) (No. 97–8889).

■ A previous felony conviction is a necessary element of a felon-in-possession charge. *See* 18 U.S.C. § 922(g)(1). Jones challenges the district court's admitting into evidence the record of his previous state conviction for attempted possession of cocaine, rather than allowing him to stipulate to the felony conviction as he offered to do.

The Supreme Court has held that a district court abuses its discretion when it rejects a defendant's offer to stipulate to the prior-conviction element of a § 922(g)(1) offense and instead admits the full judgment record of a prior conviction, if the name or nature of the prior conviction increases the risk of a verdict tainted by improper considerations and the purpose of the evidence is solely to prove the prior-conviction element. *Old Chief,* 117 S.Ct. at 652–55. The Court explained that the risk of unfair prejudice to a

---

8. We reiterate that a selective prosecution claim is not a defense to a criminal charge, but an independent assertion of misconduct. *See Armstrong,* 517 U.S. at 463, 116 S.Ct. 1480. Thus, our finding that Jones is entitled to discovery does not warrant a new trial, but only gives Jones the opportunity to move to dismiss the indictment following discovery.

defendant varies from case to case, but is "especially obvious" when a prior conviction was for a gun crime or an offense similar to other charges in the pending case. *Id.* at 652.

Here, evidence of Jones's prior conviction served to alert the jury that Jones had pleaded guilty to a virtually identical crime approximately two years before his trial in this case. As Jones's prior conviction was for a drug offense similar to those charged in the underlying action, and the purpose of its introduction was only to prove the prior-conviction element of § 922(g)(1), the district court clearly abused its discretion in rejecting Jones's offer of stipulation. This is such a case in which the risk of unfair prejudice should have been "especially obvious." The Government nonetheless argues that any error committed by the district court was harmless error.[9]

■■■■ This court, as well as other federal appellate courts, has held that an *Old Chief* error is subject to harmless error analysis. *See Daniel,* 134 F.3d at 1262–63; *see also, e.g., United States v. Anaya,* 117 F.3d 447, 449 (10th Cir.1997). Thus, "an error which is not of constitutional dimension is harmless 'unless it is more probable than not that the error materially affected the verdict.'" *See Daniel,* 134 F.3d at 1262 (citing, *inter alia, United States v. Fountain,* 2 F.3d 656, 668 (6th Cir.1993)).

■■■■ Here, we are confronted with a situation in which there was a blatant *Old Chief* error in a case in which there was considerable evidence of the defendant's guilt with respect to the potentially tainted convictions. The district court stated that "the evidence in this case against Mr. Jones that he was guilty on the drug counts was absolutely overwhelming and far beyond any reasonable doubt and it would be inconceivable the jury would have concluded otherwise." We agree with the district court that there was overwhelming evidence that Jones was guilty of the drug offenses. The evidence included

numerous tape recordings of controlled drug transactions in which Jones sold drugs to a confidential informant; drugs were found on Jones when he was arrested; the search of Jones's house revealed the presence of drugs and firearms; and there was testimony regarding Jones's "cooking" of cocaine into cocaine base. Thus, despite the substantial risk of prejudice arising from the admission of Jones's prior drug conviction, it was not "more probable than not" that the jury would have acquitted Jones on the drug offenses but for the admission of that evidence. We also note that the district court gave two limiting instructions with respect to the prior-conviction testimony and there was no testimony regarding the underlying facts of the prior conviction.

Accordingly, we find that the district court abused its discretion by failing to accept Jones's stipulation as to his prior conviction; however, we find that in light of the overwhelming evidence against Jones, the district court's error was harmless in this case.

### D. Rule 29 Motion

■■■■ Jones next contends that the district court erred in denying his Fed.R.Crim.P. 29 motion for judgment of acquittal on Counts 4 and 5 of the superseding indictment. We review the denial of a Rule 29 motion to determine, after viewing the evidence in the light most favorable to the Government, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Gibson,* 896 F.2d 206, 209 (6th Cir.1990).

■■■■ Jones contends that the district court erred in denying his Rule 29 motion, offered at the close of the Government's case, to dismiss Counts 4 and 5 of the superseding indictment which charged unlawful distribution and possession with intent to distribute cocaine. Jones argues that the Government

---

9. The Government acknowledges that the district court erred; in fact, the Government attempted to dismiss Count 21 after trial and prior to sentencing, conceding that the count "was proved in violation of the *Old Chief* ruling." The district

court denied the government's motion to dismiss Count 21. We note in passing that the dismissal of Count 21 would have had no effect on the prejudicial nature of the admitted prior conviction with respect to Jones's drug convictions.

did not prove the origin and chain of custody of the physical drug evidence.

At trial, the law enforcement officer was asked three times about his procedures for obtaining and safekeeping the drugs. Each time, he offered affirmative responses regarding the propriety of the chain of custody and storage of the drugs purchased in drug buys. The confidential informant also confirmed in his testimony that he took the drugs from each of the ten drug buys from Jones directly to the law enforcement officer sequestering the drug evidence.

Viewing this challenge to the sufficiency of the evidence in a light most favorable to the Government, we affirm the district court's denial of Jones's Rule 29 motion. Neither testimony nor physical evidence suggested any deficiencies in the chain of custody or handling of the drug evidence; rather, there was testimony regarding the appropriate handling of the physical evidence. Accordingly, a rational trier of fact could have found the evidence sufficient to convict Jones on Counts 4 and 5. We therefore affirm the district court's denial of Jones's Rule 29 motion.

### E. Stolen Weapon Enhancement

■ Jones asserts that the district court erred by enhancing his base offense level by two levels for the possession of a stolen weapon. We review for clear error a district court's factual findings in its application of the Sentencing Guidelines. *See United States v. Winston,* 37 F.3d 235, 240 (6th Cir.1994) (citing 18 U.S.C. § 3742).

■ Jones contends error in the district court's two-level enhancement of his base offense level pursuant to U.S.S.G. § 2K2.1(b)(4), which provides for an increase of two levels if an unlawfully possessed weapon was stolen. "If any firearm was stolen, or had an altered or obliterated serial number, increase by two levels." U.S.S.G. § 2K2.1(b)(4). Jones bases his allegation of error on his characterization of the two-level enhancement as a *"sua sponte* upward departure."

Jones's argument fails. Although the probation officer did not originally recommend this enhancement, a sentencing enhancement is within the purview of the district court, as it is the district court's task to calculate a sentence under the Guidelines. *See generally* U.S.S.G. Ch. 1, Pt. A. In determining Jones's sentence, the district court did not depart upwards from Jones's guideline range to produce his sentence. The district court simply calculated Jones's sentence according to the Sentencing Guidelines. There is no indication of clear error on the part of the district court; the factual finding that the firearm was stolen was based on an uncontested and corroborated excerpt of the presentence investigation report. *See* U.S.S.G. § 2K2.1, cmt. (n.19) ("The enhancement under subsection (b)(4) for a stolen firearm . . . applies whether or not the defendant knew or had reason to know that the firearm was stolen."). For all the above reasons, we affirm the district court on this issue.

### F. Obstruction of Justice Enhancement

■ Jones contends additional sentencing error. He argues that the district court erred when it enhanced his base offense level by two levels for obstruction of justice on the basis that he lied under oath at the sentencing hearing. Jones asserts that even if he had testified falsely at the hearing, the false testimony was not material to the sentencing and thus the enhancement was improper. We review for clear error a district court's factual determination that a defendant's conduct warrants an obstruction of justice enhancement. *See United States v. Zajac,* 62 F.3d 145, 148 (6th Cir.1995). However, issues involving the interpretation of the Sentencing Guidelines are legal questions which we review de novo. *See United States v. Walker,* 119 F.3d 403, 405 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 643, 139 L.Ed.2d 621 (1997).

■ Pursuant to the Sentencing Guidelines, a defendant's offense level can be increased two levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. This enhancement applies when a defendant commits perjury, among

other types of possible obstructive behavior. *See id.*, comment. (n.3). The Sentencing Guidelines explain that the testimony was "material" if "the evidence, fact, statement, or information ..., if believed, would tend to influence or affect the issue under determination." *Id.*, comment. (n.5).

At the sentencing hearing, Jones testified that on the day of his arrest, the local law enforcement officers who arrested him were wearing t-shirts that contained a racial slur. In response to this testimony, the district court took the time to explore Jones's sworn statements. After hearing from all the involved persons and viewing the t-shirts, the district court determined that no slurs appeared on the t-shirts. In relation to the commission of perjury, the district court determined that Jones "certainly claimed [the slur] was on the T-shirts. The Court has seen the T-shirts. It is not on there."

■■■ In order to impose a sentencing enhancement under U.S.S.G. § 3C1.1, a district court must find that a perjurious statement is material, that is, that it "would tend to influence or affect the *issue under determination.*" *Id.* (emphasis added). We have stated that in order for perjurious testimony at a sentencing hearing to warrant an enhancement, the testimony must be "material and nontrivial.... A false statement made at a sentencing hearing regarding information that is relevant to sentencing is material and nontrivial for purposes of § 3C1.1." *United States v. Aideyan*, 11 F.3d 74, 76 (6th Cir.1993) (citations omitted).

In the present case, Jones testified at the sentencing hearing regarding his claim of selective prosecution. Jones testified that the officers' t-shirts contained a racial slur that was written on the t-shirts with magic marker. However, the t-shirts did not contain a racial slur when viewed by the district court. Even if we accept the district court's finding that Jones committed perjury, we do not believe that the perjured testimony regarding Jones's selective prosecution claim was relevant to Jones's sentencing. The court had already ruled upon Jones's claim of selective prosecution which was not at issue at the time of sentencing. Based on the record, it appears that the district court was

simply giving Jones the opportunity to speak fully and freely before his sentencing; there were no pending arguments regarding selective prosecution that could have influenced Jones's sentence. Because Jones's testimony was not material to his sentencing, we find that the district court erred in enhancing Jones's sentence for obstruction of justice. We therefore remand this case to the district court for resentencing.

### G. Section 2D1.1's Definition of "Cocaine Base"

In pro se briefing, Jones contends that his sentence should be vacated and remanded for resentencing under U.S.S.G. § 2D1.1 because the Government did not prove that the drug evidence used as the basis for calculating his guideline range was crack cocaine. He argues that because the seized drugs were not tested for the presence of sodium bicarbonate (baking soda), the Government could not prove that the drugs were in fact crack cocaine. We understand his argument to run as follows: (1) U.S.S.G. § 2D1.1 defines "cocaine base" as "crack[, which is] the street name for a form of cocaine base usually prepared by processing cocaine hydrochloride and **sodium bicarbonate**, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c)(n.D) (emphasis added); (2) under this definition, forms of cocaine base other than crack are to be treated as cocaine hydrochloride for purposes of § 2D1.1, *see United States v. Munoz–Realpe*, 21 F.3d 375, 377 (11th Cir.1994) (citing United ed States Sentencing Comm'n, Amendments to the Sentencing Guidelines for the United States Courts, 58 Fed.Reg. 27,148, 27,156 (1993)); and (3) such a distinction is significant because of the much discussed disparity in the guideline range produced by § 2D1.1's drug quantity table for crack cocaine versus other forms of cocaine. Jones essentially argues that the district court clearly erred by sentencing him on the basis of crack cocaine because the evidence did not support such a classification of the drug evidence as there was no evidence of the presence of sodium bicarbonate.

■■■ For sentencing purposes, the Government is required to prove by a pre-

**982**

ponderance of the evidence the types of controlled substances related to an offense. *See, e.g., United States v. Smith,* 39 F.3d 119, 122 (6th Cir.1994). At sentencing, whether a particular substance is crack or another form of cocaine is a question of fact to be determined by the district court. *See Edwards v. United States,* — U.S. —, —, 118 S.Ct. 1475, 1477, 140 L.Ed.2d 703 (1998). Accordingly, we review the district court's factual determination of the identity of drugs under § 2D1.1 for clear error. *See Smith,* 39 F.3d at 122.

■ In 1993, a definition of "cocaine base" was added to the Sentencing Guidelines, apparently in response to a division of the courts of appeal regarding whether "cocaine base" under § 2D1.1 included only crack or whether it broadly encompassed all other substances which the scientific community generally considered to be "cocaine base." *See, e.g., United States v. Rodriguez,* 980 F.2d 1375 (11th Cir.1992); *United States v. Jackson,* 968 F.2d 158 (2d Cir.1992). Now, the definition of "cocaine base" in the guidelines makes it clear that only the "crack" form of cocaine base should receive the 100:1 sentencing enhancement under § 2D1.1 for "cocaine base." [10] *See, e.g., United States v. Robinson,* 144 F.3d 104, 108 (1st Cir.1998); *United States v. Adams,* 125 F.3d 586, 591 (7th Cir.1997). Thus, in order to apply the § 2D1.1 drug quantity table for "cocaine base," the Government must prove by a preponderance of the evidence that the defendant possessed "crack" as defined by § 2D1.1.[11] *See, e.g., Smith,* 39 F.3d at 122.

■ In this case, the Government argues that a preponderance of evidence supported the district court's conclusion that the drug substance at issue was crack because (1) a forensic scientist who tested the evidence testified that the substance was cocaine base

and also testified that, based on his visual observation of the substance, it was crack, (2) both Officer Spence, an officer experienced with crack, and the confidential informant testified that the purchased drug substance was crack, and (3) the transcripts of the tapes of drug transactions by the confidential informant indicate that powder cocaine was frequently being "cooked" into crack and then sold to the confidential informant and the taped conversations also often reference the drugs being sold as crack.

The specific nature of Jones's challenge to his sentence is that under the definition of crack supplied by the Sentencing Guidelines, the Government was required to present evidence that the drug evidence had been processed using sodium bicarbonate and, in this case, the Government failed to do so. We disagree with Jones's assertion. The amendment does not attempt to define crack as being manufactured in any particular way. The definition, through the use of the word "usually," serves merely to illustrate a common method of conversion. *See United States v. Abdul,* 122 F.3d 477, 479 (7th Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 643, 139 L.Ed.2d 621 (1997). If we were to disregard the qualifying term "usually," crack dealers could avoid the penalties for distribution of crack simply by finding some substitute for sodium bicarbonate in production, or by crushing the rocks so that the final product resembles powder. Although crack might generally be produced using sodium bicarbonate, production via sodium bicarbonate is not the exclusive preparation method recognized for purposes of § 2D1.1. We conclude that the qualifier "usually" in the phrase "usually prepared ... with sodium bicarbonate" is an acknowledgment that other methods of crack preparation exist and that not all forms of "cocaine base" need

---

10. The Guidelines also specifically identify one type of cocaine base which is excluded from treatment as "crack": "coca paste, an intermediate step in the processing of coca leaves into cocaine hydrochloride, scientifically is a base form of cocaine, but it is not crack." U.S.S.G.App. C, Amend. 487 (Nov. 1, 1993).

11. We note that this issue has viability only because Jones was sentenced to a term of imprisonment beyond the minimum mandated by statute.

*See United States v. Eggersdorf,* 126 F.3d 1318, 1320 (11th Cir.1997) (noting circuit agreement that amendment to § 2D1.1 does not affect the statutory minimum sentence) (citing cases), *cert. denied,* — U.S. —, 118 S.Ct. 1204, 140 L.Ed.2d 332 (1998). The mandatory minimum sentence for a conviction under 21 U.S.C. § 846 is 240 months, *see* 21 U.S.C. § 841(b)(1)(A), and Jones was sentenced to 262 months of incarceration.

contain sodium bicarbonate to qualify as crack for sentencing purposes; the Commission's reference to sodium bicarbonate is merely illustrative.[12] Accordingly, the presence of sodium bicarbonate is not a necessary prerequisite to a district court's factual determination that cocaine base is crack. *See Abdul,* 122 F.3d at 479; *United States v. Stewart,* 122 F.3d 625, 627 (8th Cir.1997). Based on the evidence in this case, we conclude that the district court did not clearly err in determining that the Government proved by a preponderance of the evidence that the drugs at issue were crack cocaine.

## CONCLUSION

For the foregoing reasons, we AFFIRM in part and REVERSE in part, and REMAND for further proceedings in accordance with this opinion.

---

12. In fact, it appears that the method which uses sodium bicarbonate is the least sophisticated and yields the lowest purity. *See United States v.* *James,* 78 F.3d 851, 856–57 (3d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 128, 136 L.Ed.2d 77 (1996).