**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James MONROE, Defendant–Appellant.**

Nos. 02–3089, 03–3039.

United States Court of Appeals,
Sixth Circuit.

Feb. 18, 2004.

Samuel A. Yannucci, Asst. U.S. Attorney, U.S. Attorney's Office, Akron, OH, for Plaintiff–Appellee.

William T. Doyle, Cleveland, OH, James D. Monroe, pro se, Loretto, PA, for Defendant–Appellant.

Before MERRITT, DAUGHTREY, and GIBBONS, Circuit Judges.

PER CURIAM.

Before us are two appeals that have been consolidated for purposes of this opinion. The first arises from the conviction of the defendant, James Monroe, on a five-count indictment for possessing and distributing cocaine, distributing cocaine base, and being a felon in possession of firearms. The second involves the district court's post-judgment denial of Monroe's motion for the return of property allegedly seized from his mother's home at the time of his arrest. Concerning his conviction, the defendant contends (1) that he received ineffective assistance of counsel; (2) that there was insufficient evidence to prove his guilt on the firearms charge and for distribution of crack cocaine; (3) that the district court abused its discretion in denying the jury's request to see certain evidence; and (4) that the court erred in sentencing him under the guidelines for crack cocaine. He also insists (5) that the district court should have held an evidentiary hearing on his motion for the return of property before denying the motion. We find no reversible error and affirm the district court's decisions in both cases.

## FACTUAL AND PROCEDURAL BACKGROUND

At the defendant's trial, Julius Thomas, a witness who had recently pleaded guilty to distributing crack cocaine, testified that he had made three controlled buys from Monroe in 2000. The first buy occurred in June and involved one ounce of powder cocaine; the second took place in August and involved four ounces of powder cocaine; and the third transaction occurred on December 12, 2000. On that date, Thomas testified, he met with Monroe and discussed buying crack cocaine from him. Monroe told him it would cost $950 per ounce, and Thomas said he wanted three ounces. When Monroe gave him three ounces of powder cocaine instead, Thomas asked whether Monroe was going to "cook it up" into crack. Monroe answered, "I have my cook here and [it] will cost you." Thomas agreed to pay the going rate—a gram off each ounce. Thomas testified that after the cocaine was cooked into crack, Monroe weighed it and found that it weighed 63 grams. When Thomas complained that it was "kind of short," Monroe answered, "I will compensate you" and threw 10 more grams of crack on the scale. Monroe then put the crack in a bag and gave it to Thomas, who passed it on to Agent Rapp, his contact in the DEA.

Agent Rapp testified that in early June 2001, he obtained an arrest warrant for Monroe and search warrants for three houses associated with Monroe, located at 743 Browning Avenue in Youngstown, Ohio, and 6452 and 6473 Rosser Avenue in Hubbard Township. According to Rapp, when he pulled up in front of 743 Browning, he saw Monroe in front of the garage, carrying a white plastic bag. Officer Chrisman, who was in the car with Rapp, testified that Monroe ran into the garage and then into the fenced-in backyard and threw the plastic bag over the fence, where it was later found. Subsequent analysis established that the bag contained approximately 390 grams of cocaine. In the garage at 743 Browning, Officer Briganti of the Boardman Police Department found two scales, baggies, and two receipts and a bill with Monroe's name on them. In the master bedroom of the house, Briganti found three guns: a black automatic that was located between the box spring and the mattress on the left side of the bed, a silver automatic in a night stand at the foot of the bed, and a revolver in a night stand to the right of the bed.

As it turned out, Monroe did not live at the 6473 Rosser address. The resident there, Ruth Gaia, testified at trial that

Monroe was her landlord and that she paid rent to "Angela," whom Monroe had married earlier that year. According to Gaia, Monroe had lived across the street at his mother's house until his marriage. After his marriage, she testified, he was often still there, but she was not sure where he lived. In the house at 6473 Rosser, officers found two scales and a safe containing, among other items, rubber or plastic gloves, baking soda, instructions for dealing with firearms, and some plastic baggies with white power residue.

The jury found Monroe guilty on all five counts contained in the indictment and returned a special verdict finding that 50 grams or more of cocaine base was involved in Count 3. As a result, the district court sentenced Monroe to concurrent sentences of 250 months on the drug-trafficking charges in Counts 1—4 and 120 months on Count 5, the firearms offense. Monroe now appeals both his conviction and sentence.

## ANALYSIS

### 1. Ineffective Assistance of Counsel

Monroe contends on appeal, for the first time, that his trial counsel provided him with ineffective assistance in virtually a dozen different ways. However, our general rule is that "a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990). Although we may review such claims when "the record is adequate to assess the merits of the defendant's allegations," *id.*, the record in this case is clearly inadequate to permit review. We therefore decline to address the merits of this claim.

### 2. Sufficiency of the Evidence

Monroe challenges the legal sufficiency of the government's case, first by arguing that there was no evidence linking him directly to the firearms that were the subject of the felon-in-possession count and that the proof linking him to the 743 Browning address where the weapons were found was insufficient to establish constructive possession. The record reflects, however, that he was at the house when the police showed up with a search warrant and an arrest warrant for him, that two vehicles associated with him were parked in the driveway or in front of the house at that time, that an address book with his name on it was found in the house, as were two receipts from the Youngstown Propane company in his name and an Ohio Edison bill addressed to him, that his wife arrived at the house during the search, and that when asked for his home address during booking, Monroe answered that he lived at 743 Browning Avenue. On the other hand, although Agent Rapp testified that he recorded the Browning Avenue address on DEA Form 202 at the time of arrest, that form was never entered into evidence, and Monroe's fingerprint card listed his address as 6473 Rosser Avenue, which was Ruth Gaia's address. In addition, despite the government's argument that Monroe took up residence with his wife at 743 Browning after his marriage, the prosecutor presented no proof at trial that Angela Monroe lived at that address, other than the testimony that she had arrived there in the middle of the search. Thus, the evidence connecting Monroe to the house at 743 Browning was not overwhelming. Nevertheless, the applicable standard requires that we review the evidence in the light most favorable to the government and, having done so, we conclude that a rational trier of fact could have found beyond a reasonable doubt that

Monroe had constructive possession of the weapons found at the 743 Browning residence.

■ The defendant next argues that there was insufficient evidence to show that he distributed crack rather than powder cocaine. He contends that the transformation of the cocaine from powder into crack occurred after it was sold to Thomas, as demonstrated by the fact that the "cook" was paid separately. Thomas testified at trial, however, that it was Monroe who told him that the cook would receive compensation for turning the powder into crack cocaine, that it was Monroe who paid the cook the compensation, and that it was Monroe who gave him the drugs when the transaction was completed. Thomas also testified that after crack was produced. Thomas and Monroe weighed it and, finding that it weighed less than the amount Thomas expected to buy, Monroe took ten grams of crack from his pocket and added it to the amount on the scale. Given this evidence, we have no hesitation in concluding that a rational trier of fact could have found beyond a reasonable doubt that Monroe sold crack cocaine to Thomas.

■ Finally, Monroe contends that the government did not prove that the substance that he allegedly sold to Thomas was, indeed, crack cocaine. He notes that the forensic chemist who found that Exhibit 3 contained cocaine base did not confirm the presence of sodium bicarbonate, which the defendant insists is "an essential element of crack cocaine." The forensic chemist specifically stated, however, that he was "able to identify the presence of cocaine base, commonly referred to as crack cocaine." In addition, it was Thomas's understanding that he had bought crack cocaine from Monroe. Based on this evidence, we conclude that a rational trier of fact could have found beyond a reason-

able doubt that the exhibit in question contained cocaine base.

### 3. Failure to Produce Form 202

Monroe argues that the district court abused its discretion in refusing to allow the jury to review Form 202 in response to the jury's request to see it during deliberations. Specifically, the jury asked, "Could we please see form 202? Form used at June 5th booking," and the judge replied, "The answer is no. You have all the evidence that was received in evidence." There was no objection to this response, and because the defendant did not object at the time that the ruling was made, we review it for plain error only. See Fed. R.Crim.P. 52(b); see also United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.1986) (employing plain error standard when defendant failed to object to jury instructions).

Our study of the record on appeal suggests that the district court was correct in determining that DEA Form 202 had not been admitted into evidence. The defendant claims that Form 202 was introduced as Exhibit 28, but when Agent Rapp was handed exhibit 28 at trial, he identified it as the photocopy of the back of a fingerprint card stating that Monroe lived at 6473 Rosser Avenue. Similarly, trial counsel identified Exhibit 28 as a fingerprint card. But, according to Agent Rapp, who first mentioned Form 202, that form was used by the DEA to record biographical information—it was not a fingerprint card. There is no other evidence to suggest that Form 202 was ever introduced as an exhibit at trial, and for this reason, the district judge could not have committed error, plain or otherwise, in declining the jury's request to inspect it.

### 4. Sentencing Challenge

The defendant contends that the district court erred in sentencing him for traffick-

ing in cocaine base when there was no evidence of the existence of sodium bicarbonate in the drug sample. He points out that the applicable federal sentencing guideline, U.S. Sentencing Guidelines Manual § 2D1.1(c), n.D, (2001), provides as follows:

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

Because there was no evidence of sodium bicarbonate, he argues, the government did not satisfy each and every element of the offense charged.

██ We have held that for sentencing purposes, "whether a particular substance is crack or another form of cocaine is a question of fact to be determined by the district court." *United States v. Jones*, 159 F.3d 969, 982 (6th Cir.1998). In reviewing such a determination, we may therefore reverse only on the basis of clear error. *See id.* Moreover, we have specifically held in the past that "the presence of sodium bicarbonate is not a necessary prerequisite to a district court's factual determination that cocaine base is crack," *id.* at 983, because "the qualifier 'usually' in the phrase 'usually prepared ... with sodium bicarbonate' is an acknowledgment that other methods of crack preparation exist and that not all forms of 'cocaine base' need contain sodium bicarbonate to qualify as crack for sentencing purposes." *Id.* at 982–83. Here, a forensic chemist testified at trial that the substance was cocaine base, the confidential informant who bought the drugs referred to them as crack, and there was talk of the drugs having been cooked from powder cocaine into crack. Given this evidence, it was not clear error for the district court to find that the substance in question was crack cocaine and to penalize the defendant accordingly.

## 5. Rule 41(e) Motion for Return of Property

Monroe was convicted in October 2001 and sentenced in January 2002. On August 22, 2002, some eight months after judgment was entered, he filed a motion for the return of property allegedly seized when the search warrant for the residence at 6452 Rosser was executed back in June 2001. In the motion, filed pursuant to Federal Rule of Criminal Procedure 41(e), the defendant claimed that officers had seized $45,375, the title to and registration for a vehicle, and a Maxell floppy disk, all of which was property belonging to him and taken from his mother's residence during the search. Attached to the motion were two pertinent exhibits: (1) a copy of an IRS form reporting gambling winnings in March 2001 amounting to $1500 and (2) the defendant's affidavit explaining that the $45,375 consisted of money given to him in 1999, his gambling winnings, and income from his employment. The government filed a response indicating that the currency taken during the search had totaled only $1,155 and that it had subsequently been returned to its owner, Andre L. Turner, who was staying at the 6452 Rosser residence at the time the search warrant was executed. Attached to the government's response were several affidavits of officers who had participated in the defendant's arrest and in the execution of the three search warrants, concerning the circumstances surrounding those events.

On October 22, 2002, the district court denied the defendant's Rule 41(e) motion, finding that "[o]ther than his own uncorroborated affidavit, [Monroe] offers no independent evidence demonstrating the ex-

istence and his lawful possession of the amount of money he claims, that the money was present at the 6452 Rosser residence searched by government agents on June 5, 2001, and that government agents seized the money." The defendant immediately filed a motion to reconsider, attaching an initially unsigned affidavit from his mother indicating that she was aware that her son habitually kept a large sum of cash in his bedroom and that the money had been confiscated by agents involved in the June 5 search of the premises, although she was "without knowledge as to the exact amount of the currency" that her son had kept in his room or how much money had been taken by officers.

This affidavit, filed after the district court's denial of the defendant's Rule 41(e) motion, was apparently not only too vague but also came too late in the proceedings to carry much weight with the district court, which denied the motion to reconsider after "review[ing] all information contained in th[e] pleading and find[ing] no basis to alter [its] previous ruling."

■ When a request for the return of property is made after a trial is concluded, the request is treated as a civil proceeding in equity, even when it is brought under Fed.R.Crim.P. 41(e). *See United States v. Duncan,* 918 F.2d 647, 654 (6th Cir.1990). Hence, we review the district court's decision for abuse of discretion. *See id.* "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made," when the district court "relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Southward v. S. Cent. Ready Mix Supply Corp.,* 7 F.3d 487, 492 (6th Cir.1993) (internal quotation marks and citations omitted). Under the circumstances of this case, we cannot say that the district court committed an abuse of discretion in failing to hold

a full-blown evidentiary hearing on a claim filed so long after the alleged seizure occurred and supported by nothing more than the claimant's self-serving affidavit and the late-filled, thoroughly non-specific affidavit submitted in his mother's name.

### CONCLUSION

For the reasons set out above, we AFFIRM the judgments of the district court both as to the defendant's conviction and sentence and as to the denial of his motion for return of property.