[Cite as *State v. Howard*, 2023-Ohio-4618.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230315 |
| | | TRIAL NO. B-2100225 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| JAMAN HOWARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 20, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Schuh & Goldberg, LLP,* and *Brian T. Goldberg,* for Defendant-Appellant.

CROUSE, **Presiding Judge.**

{¶1} Defendant-appellant Jaman Howard appeals his convictions for aggravated trafficking in drugs and trafficking in drugs. In two assignments of error, he challenges the trial court's denial of his motion to suppress and argues that his convictions were not supported by sufficient evidence and were contrary to the manifest weight of the evidence. We find Howard's arguments to be without merit and affirm the trial court's judgment.

## I. Factual and Procedural Background

{¶2} Howard was stopped by a Village of Addyston police officer, and drugs were found in his vehicle. The Addyston officer subsequently contacted Delhi Township Police Officer Justin Laverty, who was assigned to the Drug Abuse Resistance Task Force ("DART"). As a DART agent, Officer Laverty collaborated with officers from various townships, villages, and cities in Hamilton County, including the Village of Addyston, that lacked the knowledge or time to engage in drug investigations.

{¶3} Officer Laverty met with Howard, who agreed to work with him as a confidential informant. In return, the drug charges Howard faced following the stop of his vehicle in Addyston were held in abeyance. Howard's cooperation with Officer Laverty was short lived because Howard ceased communicating with him. As a result, Officer Laverty started conducting surveillance on Howard's home. During the surveillance, Officer Laverty witnessed what he believed to be two hand-to-hand drug transactions. He accordingly arranged for Howard to be stopped on the drug charges that had been held in abeyance. Drugs were found in the vehicle that Howard was driving when this stop was executed. Officer Laverty obtained a warrant to search

2

Howard's home. When the search was executed, various drugs, money, and a scale were found in the basement of the home.

{¶4} Howard was subsequently indicted for aggravated trafficking in drugs, a first-degree felony; aggravated possession of drugs, a second-degree felony; trafficking in drugs, a fourth-degree felony; and possession of drugs, a fifth-degree felony. Each of the trafficking offenses was alleged to have been committed in the vicinity of a school or a juvenile. But prior to trial, the state dismissed this allegation, resulting in a reduction of the charge of aggravated trafficking in drugs to a second-degree felony and the charge of trafficking in drugs to a fifth-degree felony.

{¶5} Howard filed a motion to suppress, arguing that the initial stop of his vehicle by the Addyston officer was improper and in violation of his Fourteenth Amendment rights. He further argued that this improper stop is what led to his contact with Officer Laverty, and that any physical evidence that was subsequently seized during the execution of the search warrant by Officer Laverty was fruit of the poisonous tree from the initial improper stop. The trial court denied Howard's motion to suppress.

{¶6} At a bench trial, Officer Laverty testified about his role as a DART agent. He explained that DART agents often give arrestees a chance to become confidential informants, and that Howard accepted such an offer. Howard signed paperwork agreeing to become an informant, and he initially responded to Officer Laverty's attempts at contact. When Howard stopped responding, Officer Laverty had Addyston prepare warrants and complaints to be filed on the charges that were held in abeyance.

{¶7} Officer Laverty further testified that on December 18, 2020, while parked nearby in an undercover vehicle, he conducted surveillance on 3122 Pershing

Court, which was the address that Howard had provided him. Officer Laverty observed one or two small children in the yard of Howard's home. A maroon SUV that Officer Laverty was familiar with, and that was occupied by passengers that he recognized as known drug users in the neighborhood, pulled up to Howard's house. Officer Laverty witnessed Howard come outside, approach the SUV, and engage in a hand-to-hand transaction through the window of the vehicle. Describing this transaction, he stated, "It wasn't a big, bulky item in his hand. It was curled in his hand, which is typical of drugs, and the same for the other passenger or buyer, and the hand curled up, you can't see what's going on. They swap the drugs for the money in each other's hands, and go." After the transaction, Howard went back inside.

{¶8}   Officer Laverty witnessed this type of transaction occur twice between Howard and the occupants of the maroon SUV in a 90-minute period. Each interaction lasted less than 15 seconds. He testified that this behavior was indicative of drug trafficking.

{¶9}   After these two transactions occurred, Officer Laverty saw Howard drive away from the house. At that point, he decided to have Howard arrested on the Addyston complaints. He contacted the Cincinnati Police Violent Crimes Unit for assistance in stopping Howard. A uniformed officer with that unit initiated a stop of Howard's vehicle. Three cell phones were recovered from Howard. Officer Laverty testified that it was common for drug dealers to carry both a personal phone and a business phone. Drugs were also found in the vehicle.

{¶10}   Officer Laverty testified that he obtained a warrant to search Howard's residence. He explained that Howard's mother, who was the owner of the home, let the officers executing the warrant inside. After learning that Howard's room was in

4

the basement, the officers focused their search on that area of the home. Officer Laverty testified that he observed personal effects of Howard's in the basement bedroom. While he conceded that he took no photographs of any such personal effects and agreed that if he had found such an item, he would have photographed it, he explained that "[t]here are some times you need to prove different things, then you would take pictures if you didn't already prove that. We were told this was Jaman Howard's room already, yes."

{¶11} According to Officer Laverty, a zipped travel bag with drugs in it, specifically a white powder and orange pills, was found in a closet in the basement. A large amount of currency in different denominations, which Officer Laverty explained was indicative of drug trafficking, was found inside a coat in the closet. Additional money was found in a shoebox in the basement. The total amount of currency recovered was $3,047. A bag of powder similar to that found in the travel bag was discovered inside a drawer of a poker table, and a bag of small colored pills was found on top of the poker table. A black digital scale with white residue on it was also found in the basement. Officer Laverty testified that the scale was also indicative of drug trafficking. The drugs recovered in the basement were tested and were determined to be methamphetamine and buprenorphine. Naloxone, which is an agent used to cut drugs, was also found. The residue found on the scale was determined to be methamphetamine.

{¶12} Delhi Township Police Officer Michael Gerde, who assisted in the execution of the search warrant, also testified at the bench trial. Officer Gerde stated that he searched the basement closet, where he found pills and a baggie of drugs in a toiletry bag, as well as currency in a jacket. He further stated that the quantity of drugs

found in the baggie was more indicative of drug trafficking than drug use by an individual.

**{¶13}** The trial court found Howard guilty of all charges. At sentencing, the offense of aggravated possession of drugs was merged with the offense of aggravated trafficking in drugs, and the offense of possession of drugs was merged with the offense of trafficking in drugs. Applying the Reagan Tokes Law, the trial court sentenced Howard to an indefinite term of three years to four years and six months of imprisonment for the offense of aggravated trafficking in drugs. It further sentenced him to a period of 12 months' imprisonment for the offense of trafficking in drugs, and it ordered the sentences to be served concurrently.

**{¶14}** Howard now appeals.

## II. Motion to Suppress

**{¶15}** In his first assignment of error, Howard argues that the trial court erred in denying his motion to suppress. He specifically contends that his motion should have been granted because the search warrant obtained by Officer Laverty was lacking in probable cause.

**{¶16}** This court's review of a trial court's ruling on a motion to suppress "presents a mixed question of law and fact." *State v. Wright*, 1st Dist. Hamilton No. C-210486, 2022-Ohio-2161, ¶ 11; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. *Wright* at ¶ 11; *Burnside* at ¶ 8. But we must "independently determine[], without deference to the trial court's conclusion, whether the facts satisfy the legal standard." *Wright* at ¶ 11; *Burnside* at ¶ 8.

6

{¶17}   At the hearing on Howard's motion to suppress, the parties focused on the issue of whether the search warrant obtained by Officer Laverty was supported by probable cause.[1] Officer Laverty testified about his placement with the DART unit and how an Addyston police officer put him in contact with Howard. He discussed the surveillance that he had conducted on Howard's home, stating that he witnessed Howard approach a vehicle that was parked on the street and engage in a "hand-to-hand transaction." Per Officer Laverty's testimony, this happened multiple times and was indicative of drug trafficking. He further discussed the subsequent stop of Howard's vehicle and how drugs were found in the vehicle.

{¶18}   Officer Laverty testified that he submitted an affidavit in support of his request for a search warrant. The affidavit, search warrant, and return on the warrant were admitted at the suppression hearing. Officer Laverty's affidavit stated that he believed drugs, currency, and other items and paraphernalia used for the sale of drugs would be found at Howard's residence. In support of such belief, the affidavit alleged the following:

> In November of 2020 your Affiant received a call from Addyston Police Department reference [sic] Jaman Howard under arrest after a traffic stop. Upon the traffic stop, Heroin, Cocaine, and Methamphetamine was [sic] located on Jaman Howard's person. Jaman Howard was cited for the drug paraphernalia and traffic violations then released pending the results from the Hamilton County Crime Lab.

---

[1] The record indicates that Howard filed the motion to suppress in both this case and in the case numbered B-2006679, which involved the underlying drug charges from Addyston. At the suppression hearing, the state indicated that it could not go forward on the prosecution of the Addyston case because the necessary officer had been terminated from his job and was not present. That case was dismissed for want of prosecution.

In December of 2020 Your Affiant spoke with Christopher Miller who is the Parole Officer for Jaman Howard. Christopher Miller confirmed that Jaman Howard gave the address of 3122 Pershing Court Cincinnati, Ohio 45211 as his residence. This address was also provided to the Bureau of Motor Vehicle as his current residence.

In December of 2020 complaints and affidavits were signed and kept in hand.

On today's date, December 18, 2020, Your Affiant conducted surveillance on 3122 Pershing Court Cincinnati, Ohio 45211 and observed Jaman Howard exit the front door multiple times and approach vehicles on the street for a short period of time before entering back into the residence through the front door.

On today's date, December 18, 2020, Your Affiant observed Jaman Howard exit 3122 Pershing Court Cincinnati, Ohio 45211 and enter into a silver 2013 Kia Sorento and leave the area. Agents from the Drug Abuse Resistance Task Force conducted mobile surveillance until the City of Cincinnati Police could conduct a traffic stop for the traffic capias and the complaints in hand. Upon the traffic stop, Jaman Howard was arrested and Xanax was located in the vehicle.

{¶19} The affidavit further alleged that based on Officer Laverty's experience with DART and the Drug Enforcement Administration, he was familiar with various methods used by drug traffickers to distribute product, launder money, and evade law enforcement. On this point, the affidavit stated:

[D]istributors of larger quantities of narcotics commonly uses [sic] parcel delivery terminals and services, commercial airlines, rental cars or personal vehicles with hidden compartments installed to transport their illegal product from source cities to the Cincinnati area. Your Affiant is also aware, the subjects involved in this lucrative conduct will open small businesses or buy rental real-estate to facilitate the distribution as well as to evade police detection and launder money. Your Affiant is also aware large-scale narcotics distributors utilize certain methods in order to detect police surveillance and investigation. Many of their vehicles, properties and other assets will be placed and/or titled in the name of other persons associated with them. Your Affiant further submits that members of such drug distribution organizations utilize different individuals and multiple locations to conceal evidence of the drug organization from law enforcement. Affiant submits that there is probable cause to find that a search of the above premises under conditions set forth herein is reasonably likely to result in the recovery of evidence as described above.

{¶20} Howard now contends that the trial court erred in determining that the search warrant was supported by probable cause. "To establish probable cause to issue a search warrant, the supporting affidavit must contain sufficient information to allow a magistrate to draw the conclusion that evidence is likely to be found at the place to be searched." *State v. Lang*, 1st Dist. Hamilton No. C-220360, 2023-Ohio-2026, ¶ 12. Probable cause will be found to exist where "a reasonably prudent person would believe that a fair probability exists that the place to be searched contains evidence of

9

a crime." *Id.* As this court has recognized, "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Id.*, quoting *State v. George*, 45 Ohio St.3d 325, 329, 544 N.E.2d 640 (1989), quoting *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As such, it "is not a high bar." *Id.*, quoting *State v. Hobbs*, 4th Dist. Adams No. 17CA1054, 2018-Ohio-4059, ¶ 35, quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018).

{¶21} Both a trial court ruling on a motion to suppress and an appellate court reviewing the trial court's decision "must give great deference to the magistrate's probable-cause determination." *Id.* at ¶ 13. Such reviewing courts must be careful not to engage in a de novo review when scrutinizing the sufficiency of an affidavit after the fact. *Id.* Rather, the duty of a reviewing court "is to ensure that the issuing magistrate had a substantial basis for concluding that probable cause existed," and "[d]oubtful or marginal cases should be resolved in favor of upholding the warrant." *Id.*, citing *George* at paragraph two of the syllabus. A magistrate is entitled to make reasonable inferences when determining whether probable cause exists to support the issuance of a warrant. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 41.

{¶22} The affidavit submitted by Officer Laverty in this case was less than robust. The relevant facts from the affidavit established that in November of 2020, Howard was the subject of a traffic stop in Addyston, during which various drugs were found on his person; that Howard resided at the place sought to be searched; that on December 18, 2020, the affiant observed Howard exit from his home multiple times, approach a vehicle on the street for a short period of time, and then reenter the

residence; that Xanax was found in Howard's vehicle when he was stopped on December 18, 2020; and that the affiant had experience recognizing drug trafficking.

{¶23} The last paragraph of the affidavit detailing common habits of drug traffickers was in large part irrelevant, as the affidavit contained no allegation that Howard engaged in any of the behavior described in that paragraph. And despite the fact that Officer Laverty testified at trial that he witnessed Howard engage in hand-to-hand drug transactions, he failed to include that information in the affidavit. Rather, he described that same behavior in the affidavit by stating that Howard "exit[ed] the front door multiple times and approach[ed] vehicles on the street for a short period of time before entering back into the residence through the front door."

{¶24} Nonetheless, given the extreme deference that we must accord the magistrate's probable-cause determination, *see Lang*, 1st Dist. Hamilton No. C-220360, 2023-Ohio-2026, at ¶ 13, we hold that the affidavit contained sufficient information to allow the magistrate to determine that evidence of drugs was likely to be found at Howard's residence. Based on the affidavit's statements regarding the drugs found on Howard's person during the traffic stop in November 2020, the Xanax found in his car in December 2020, and the observation of Howard exiting from his residence multiple times and approaching vehicles in the street for a short period of time before reentering the residence, the magistrate could have reasonably inferred that Howard was obtaining drugs from inside his house and passing them to persons in the cars parked on the street in exchange for money. *See Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, at ¶ 41. And with a belief that Howard was dealing drugs from his home, the issuing magistrate "may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking." *Hobbs*, 4th Dist.

11

Adams No. 17CA1054, 2018-Ohio-4059, at ¶ 59, quoting *United States v. Williams*, 544 F.3d 683, 687 (6th Cir.2008).

**{¶25}** Although the affidavit in this case was thin, it was not devoid of information indicating that evidence of drugs was likely to be found in Howard's residence. And, as we have explained, "[d]oubtful or marginal cases should be resolved in favor of upholding the warrant." *Lang* at ¶ 13, citing *George*, 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph two of the syllabus. We accordingly hold that the trial court did not err in finding that the affidavit was supported by probable cause and in denying Howard's motion to suppress.

**{¶26}** The first assignment of error is overruled.

### III. Sufficiency and Weight of the Evidence

**{¶27}** In his second assignment of error, Howard challenges the sufficiency and weight of the evidence supporting his convictions.

**{¶28}** When reviewing a challenge to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4. The court's role is to ask "whether the evidence against a defendant, *if believed*, supports the conviction." (Emphasis sic.) *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, ¶ 16.

{¶29} A challenge to the manifest weight of the evidence, on the other hand, requires this court to "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶30} While Howard argues that the evidence did not support his convictions for both possession of drugs and trafficking in drugs, we only review his challenge to the convictions for trafficking in drugs. The offenses of aggravated possession of drugs and possession of drugs were merged at sentencing with the two trafficking offenses. Because no sentences were imposed for the possession offenses, Howard was not convicted of those offenses. *State v. Cooper*, 1st Dist. Hamilton No. C-180401, 2019-Ohio-2813, ¶ 15. And because no judgment of conviction was entered, we do not consider a challenge to sufficiency or the weight of the evidence regarding the offenses. *Id.* (declining to address sufficiency argument for a merged count because no judgment of conviction was entered for that count); *State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 53 (holding that "merged counts are not convictions" and declining to address a sufficiency argument as to the merged counts).

{¶31} Howard was convicted of both aggravated trafficking in drugs and trafficking in drugs in violation of R.C. 2925.03(A)(2). This statute provides that "[n]o person shall knowingly * * * Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled

substance or a controlled substance analog is intended for sale or resale by the offender or another person."

**{¶32}** Howard's sole challenge to the sufficiency and the weight of the evidence supporting his convictions is that the evidence failed to establish that he was in possession of the drugs found in the basement of his home.

**{¶33}** Pursuant to R.C. 2925.01(K), " 'possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "Possession may be actual or constructive and may be proven by circumstantial evidence." *State v. Devaughn*, 1st Dist. Hamilton No. C-180586, 2020-Ohio-651, ¶ 32. Here, as Howard was not found in actual possession of the drugs, the state had to establish his constructive possession of them.

**{¶34}** Constructive possession may be found "when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976); *Devaughn* at ¶ 32. The individual found to be in constructive possession "must be conscious of the presence of the object." *Devaughn* at ¶ 32. Constructive possession cannot be demonstrated by mere presence in the area where the object is found. *Id.* at ¶ 33. Rather, proximity to the object "must be 'coupled with another factor or factors probative of dominion and control over the contraband.' " *Id.* at ¶ 34, quoting *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.).

**{¶35}** Following our review of the record, we hold that the evidence in this case was sufficient to establish Howard's constructive possession of the drugs found in the

basement. Officer Laverty's testimony, if believed, established that Howard resided in the basement of the home. The basement was the only room searched during the warrant's execution, and it contained personal effects of Howard's. There was no evidence in the record that Howard's mother, who also resided in the home, was involved in the use or sale of drugs. Further linking Howard to the drugs in the basement and supporting a finding that he constructively possessed them was Officer Laverty's observation of Howard engaging in what he believed to be two hand-to-hand drug transactions outside of the home and his testimony that drugs were found in Howard's vehicle during a traffic stop later that same day.

{¶36} Additionally, the large quantity of drugs recovered supported an inference that Howard was aware of the presence of the drugs, a necessary requirement for constructive possession. *See State v. Carpenter*, 2019-Ohio-58, 128 N.E.3d 857, ¶ 28 (3d Dist.) (the "vast amount of drug evidence" found in the residence allowed the jury to infer that appellant knew of the presence of the controlled substances in the residence). Collectively, this evidence established that Howard was conscious of the presence of the drugs and exercised dominion and control over them. *See Devaughn*, 1st Dist. Hamilton No. C-180586, 2020-Ohio-651, at ¶ 32.

{¶37} Howard's trafficking convictions were also supported by the manifest weight of the evidence. As the trier of fact, the trial court was in the best position to judge the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Shepard*, 1st Dist. Hamilton No. C-190747, 2021-Ohio-964, ¶ 62. The trial court was entitled to believe Officer Laverty's testimony that he witnessed Howard engage in hand-to-hand drug transactions and to rely on that information to link Howard to the drugs in the basement. This was not

the rare case in which the trier of fact lost its way and committed a manifest miscarriage of justice in convicting Howard. *See Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, at ¶ 16.

{¶38}   Howard's second assignment of error is accordingly overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.