[Cite as *State v. Johnson*, 2024-Ohio-1147.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


|                          |   |                                  |
|--------------------------|---|----------------------------------|
| STATE OF OHIO,           | : | APPEAL NO.  C-230221             |
|                          |   | TRIAL NO.    B-2101292           |
| Plaintiff-Appellee,      | : |                                  |
|                          |   | *O P I N I O N.*                 |
| vs.                      | : |                                  |
|                          |   |                                  |
| DARRIUS JOHNSON,         | : |                                  |
|                          |   |                                  |
| Defendant-Appellant.     | : |                                  |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause
Remanded

Date of Judgment Entry on Appeal: March 27, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*,
Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Joshua R. Crousey*, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1}   In an application for a warrant to search defendant-appellant Darrius Johnson's apartment after police twice observed him dealing drugs in downtown Cincinnati, an officer submitted an affidavit describing his drug activity and the place officers believed he lived.  But nowhere in the affidavit did the officer connect the things they sought to seize—drugs and drug instruments, proceeds from drug sales, and weapons—with the place they sought to search.  Because the magistrate here issued the search warrant without any such information connecting Mr. Johnson's suspected drug activity to his residence, the warrant lacked probable cause and was issued in contravention of the Fourth Amendment.  Accordingly, we reverse Mr. Johnson's convictions stemming from the illegal search.  Because the evidence supporting his conviction for failing to comply with a police signal did not arise from the search, we affirm the trial court's judgment on that conviction only.

I.

{¶2}   As part of an investigation of drug activity in downtown Cincinnati, police officers began to suspect Mr. Johnson of drug trafficking.  Using confidential informants, officers conducted two controlled drug purchases from him, confirming their suspicions.  After locating an apartment in which he lived and surveilling the property to confirm he lived there, officers set up a plan to arrest Mr. Johnson for outstanding traffic capiases.

{¶3}   Officers set the plan into motion on March 2, 2021.  With undercover officers stationed around Mr. Johnson's apartment complex, two uniformed officers in a marked police cruiser approached him on the street as he left the building with a woman and walked toward a vehicle parked on the street.  Around the same time that

he entered a Chevrolet vehicle alone, the cruiser's overhead lights activated, and an officer stepped out of the cruiser, gun drawn, to approach and arrest Mr. Johnson. Before they could engage him further, he rapidly sped away from the curb and evaded officers after a brief vehicle chase. Mr. Johnson's approach and flight was captured on body-worn camera ("BWC") video, which was shown at his trial.

{¶4} With Mr. Johnson out of the picture, officers entered the common area of the building and asked a neighbor about who lived in the target apartment and showed him a photo of Mr. Johnson. The neighbor confirmed that Mr. Johnson lived there, prompting officers to apply for a search warrant. Relying on an affidavit from Officer Grant Hunter laying out the investigation of Mr. Johnson and the events of the day so far, the magistrate issued the search warrant.

{¶5} The affidavit describes the two controlled drug purchases and subsequent surveillance of Mr. Johnson as follows. The week of January 24, 2021, officers coordinated with a confidential informant who contacted Mr. Johnson and met with him in downtown Cincinnati to buy drugs. Mr. Johnson and the informant agreed to an amount of "heroin/fentanyl" and the price, and he directed the informant to conduct the exchange with the driver of a nearby Nissan vehicle. The affidavit did not describe where Mr. Johnson had come from before the transaction, where he went after, or what vehicle he arrived or left in, but it did state he was "getting into" a different Nissan vehicle upon the informant's arrival.

{¶6} A few weeks later, in mid-February, officers conducted a second controlled purchase with another informant who contacted and met with Mr. Johnson at a different downtown intersection. This time, the informant purchased "heroin/fentanyl" directly from Mr. Johnson, sitting inside a blue Hyundai Elantra.

3

Again, the affidavit did not describe where he had come from before the transaction, where he went after, or what vehicle he arrived or left in. During this purchase, the affiant officer observed Mr. Johnson and the Hyundai vehicle he was "utilizing."

{¶7} About a week later, the affiant obtained a "cell phone ping" on Mr. Johnson's phone, placing it around Allendorf Drive near the Oakley neighborhood "for extended hours of the day and night." He then located a utility bill record in Mr. Johnson's name for a specific apartment unit on Allendorf Drive. Conducting surveillance of the apartment building, which included four total units and which was part of a larger apartment complex of similar buildings, the affiant in one instance observed Mr. Johnson leave the building entrance shared by the four apartments, enter the same Hyundai vehicle observed during the second controlled buy, and drive away.

{¶8} Finally, the affidavit describes the events of March 2, including how Mr. Johnson left the apartment building with a woman and fled from police alone in a Chevrolet vehicle and that officers spoke with a neighbor to confirm he lived in the target apartment unit. Based on the officers' investigation, the affiant explained that he believed the apartment contained additional drugs, proceeds from drug sales, instruments used in drug trade, and weapons or parts thereof used to protect the proceeds. The magistrate signed the warrant and officers conducted the search, all on March 2, about two weeks after the second controlled buy.

{¶9} Police seized a loaded pistol, about 250 grams of fluorofentanyl and fentanyl-related compounds, plastic baggies, a money counter, a shoebox of cash, a digital scale, a blender with residue, and Narcan. They also located an Internet service bill in Mr. Johnson's name, his birth certificate, a "jail bag" (a bag of belongings

4

someone takes home when leaving jail) labeled "Brumfield," and a debit card with the name "Tremond Casey." Testing on a major DNA profile taken from the firearm returned a hit for an unidentified female individual, and Mr. Johnson was excluded. Testing on a minor profile could not be completed, and police conducted no fingerprinting. They determined that Mr. Johnson likely lived alone in the apartment because one bedroom had furniture in it, while the other was empty except for some loose clothes, and because only his personal paperwork was located inside.

{¶10} Mr. Johnson filed a motion to suppress the evidence recovered from the search, arguing the search warrant was issued without probable cause. The trial court denied the motion after a hearing because, it concluded, officers had established that he lived in the specific apartment unit and came and went from that apartment to conduct two hand-to-hand drug transactions at a separate location in the weeks leading up to the warrant's issuance on March 2. However, as will be explored below, the affidavit lacked any information connecting the residence in question to any drug-related activities.

{¶11} While testifying at trial, Officer Hunter possessed a case file that he periodically referenced. Near the end of cross-examination, defense counsel asked Officer Hunter whether he reviewed it in anticipation of testifying and whether it contained the officer's "cliff notes" on the case. He responded yes to both. Defense counsel asked the court for an opportunity to review the officer's notes, but it denied the request after examining the notes because, it said, "It's not relevant. It's stuff that you already objected to and I sustained it because it's related to stuff that happened on a different day." Counsel renewed his request the next day, citing Evid.R. 612. The court again denied that request and counsel's additional request to seal and preserve

the evidence for appellate review. Defense counsel objected a third time at the conclusion of all evidence, this time also asking the court to allow him to preserve the notes for appeal via a proffer, and the trial court again denied his request to review, seal, and preserve the notes.

{¶12} The jury convicted Mr. Johnson of six felonies: having weapons while under disability, in violation of R.C. 2923.13(A)(3) (count one); trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(2) (counts two and four); possession of a fentanyl-related compound, in violation of R.C. 2925.11(A) (counts three and five); and failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B) (count six). They also found the amount of drugs exceeded 100 grams regarding counts two, three, and four, rendering Mr. Johnson a "major drug offender" under R.C. 2925.03. The court merged count three with count two and merged count five with count four and sentenced him to an aggregate of 14 years and nine months to 16 years and six months in prison. He now appeals his convictions, arguing that the trial court erred by denying the motion to suppress, not allowing defense counsel to review the officer's notes, and not preserving the notes for appeal, and that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

II.

{¶13} We begin by reviewing the motion to suppress and the underlying search warrant because our conclusion on that assignment of error is dispositive of Mr. Johnson's appeal on most of his convictions. At the outset, we note that because counts three and five were merged into counts two and four at sentencing, Mr. Johnson cannot appeal those counts because he was not sentenced on them. *See* R.C.

6

2941.25; *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12-13; *State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 53. Our analysis is accordingly confined to counts one, two, four, and six.

{¶14} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Winfrey*, 1st Dist. Hamilton No. C-070490, 2008-Ohio-3160, ¶ 19. At a suppression hearing, "the trial court is in the best position to decide the facts and to evaluate the credibility of the witnesses." *Id.* Appellate courts accordingly must defer to the factual findings of the trial court in evaluating a suppression motion, so long as they are supported by competent, credible evidence. *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 14. "[B]ut we review de novo the court's application of the law to those facts." *State v. Olagbemiro*, 1st Dist. Hamilton Nos. C-170451 and C-170452, 2018-Ohio-3540, ¶ 9, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶15} In making the initial determination whether to issue a search warrant upon probable cause, "the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, * * * there is a fair probability that contraband or evidence of a crime will be found in" the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The probable cause determination is a heavily fact intensive, totality-of-the-circumstances assessment, but at a minimum, "[t]he affidavit supporting the search warrant must set forth adequate facts to establish a nexus between the place to be searched and the evidence sought, which depends on the facts and circumstances of each individual case." *State v. Lang*, 1st Dist. Hamilton No. C-220360, 2023-Ohio-2026, ¶ 19, citing *State v. Hobbs*, 4th Dist. Adams No. 17CA1054,

2018-Ohio-4059, ¶ 58; *see also United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.2004) (en banc).[1] Accordingly, where police officers apply for a warrant to search the home of a suspected drug dealer, the supporting affidavit must, under the totality of the circumstances, establish a nexus between the defendant's criminal activity and his residence sufficient to raise a fair probability that evidence of criminal activity will be found there. *See Lang* at ¶ 19; *State v. Howard*, 1st Dist. Hamilton No. C-230315, 2023-Ohio-4618, ¶ 20, 24.

{¶16} When reviewing whether a magistrate's decision to issue a warrant ultimately comports with the Fourth Amendment to the U.S. Constitution, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * [concluding]' that probable cause existed." *Gates* at 238, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In doing so, " 'trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.' " *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 14, quoting *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus.

---

[1] The probable cause "nexus" requirement is not to be confused with the " 'minimally sufficient nexus' " requirement that Ohio courts and the Sixth Circuit have applied in determining whether to apply the good faith exception to the exclusionary rule. *State v. Schubert*, 171 Ohio St.3d 617, 2022-Ohio-4604, 219 N.E.3d 916, ¶ 9-13, quoting *Carpenter* at 596. The "minimally sufficient nexus" requirement for the good faith exception is a distinct and lower standard than the probable cause "nexus" requirement, and a "minimally sufficient nexus" is insufficient for concluding a magistrate had a "substantial basis" for probable cause. *See Carpenter* at 594-596. At this point in the analysis, we only consider whether a "nexus" existed to support the magistrate's probable cause determination. As explained below, the state did not advance a good faith exception argument for us to consider.

**{¶17}** This is no doubtful or marginal case. Concluding that the warrant was supported by probable cause, the trial court indicated, "There's a bunch of other information about how they surveilled him and witnessed him engaging in hand-to-hand transactions and coming back and forth from this address." But the record contradicts this conclusion. Certainly, the affidavit included significant evidence that Mr. Johnson lived at the Allendorf address. However, at no point did the affidavit include any information regarding where he had come from before or went after the two controlled buys, and it included no other evidence of drug trafficking. At the suppression hearing, though, Officer Hunter testified that "My investigation showed that Mr. Johnson was staying in [the Allendorf apartment] and then travelling downtown, picking up drug transactions." Although the trial court may have been persuaded by Officer Hunter's testimony, only the affidavit, and not oral testimony, was offered to the magistrate in support of the search warrant. And where that is the case, "the magistrate determines the sufficiency of the affidavit by evaluating the facts contained in the four corners of the affidavit and applies an objective-reasonableness standard. A reviewing court," including this court and the trial court below, "is concerned *exclusively with the statements contained within the affidavit itself*." (Emphasis added.) *Lang* at ¶ 14, citing *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 39. Therefore, the trial court's conclusion that Mr. Johnson was observed coming back and forth from his Allendorf address to engage in drug transactions is not supported by competent, credible evidence from the affidavit, and we do not defer to that factual finding. *Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, at ¶ 14.

{¶18} Standing alone, the affidavit merely establishes Mr. Johnson's status as a suspected drug dealer and the fact that he lived at the place to be searched, at least in the weeks after he was observed selling drugs. Taken as a whole, in the totality of the circumstances, the affidavit fails to establish a nexus between his drug activity and the apartment the officers sought to search. Specifically, the fact Mr. Johnson was surveilled one time leaving the apartment building and driving away in the same Hyundai vehicle that he had "utilized," as the affiant put it, during the second controlled buy about a week or two earlier (the affidavit is not clear on timing) establishes nothing beyond what was already apparent: Mr. Johnson likely lived at that address and had at least periodic access to that vehicle. Further, the Hyundai's one-time presence outside Mr. Johnson's building (well before the search on March 2) suggests nothing about the contents of the apartment on the date of the search. To conclude otherwise would render trivial the Fourth Amendment's probable cause requirement.

{¶19} The affidavit's lack of a substantial basis for probable cause draws into sharper focus when contrasted with other recent cases where this court has upheld search warrants for residences used by suspected drug dealers. In *State v. Lang*, this court reversed a trial court's grant of a motion to suppress, concluding there was probable cause to issue a search warrant where:

> [R]eliable evidence connected Lang's drug activity to [Address 1, where Lang resided]. The detectives conducted numerous hours of surveillance of [] two addresses and established a daily pattern of movement between [Address 1] and [Address 2]. Every day, Lang traveled from [Address 1] to [Address 2] at roughly the same time,

engaged in confirmed drug transactions, and returned nightly to [Address 1]. That pattern caused Detective Ingram, who had numerous years of experience, to believe that evidence of drug trafficking would likely be found at [Address 1].

*Lang*, 1st Dist. Hamilton No. C-220360, 2023-Ohio-2026, at ¶ 23.

{¶20} This court also upheld a trial court's denial of a defendant's motion to suppress where:

Based on the affidavit's statements regarding the drugs found on Howard's person during the traffic stop in November 2020, the Xanax found in his car in December 2020, and the observation of Howard exiting from his residence multiple times and approaching vehicles in the street for a short period of time before reentering the residence, the magistrate could have reasonably inferred that Howard was obtaining drugs from inside his house and passing them to persons in the cars parked on the street in exchange for money. *See* [*State v.*] *Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, at ¶ 41.

*Howard*, 1st Dist. Hamilton No. C-230315, 2023-Ohio-4618, at ¶ 24.

{¶21} In contrast to *Lang*, the affidavit here contained no evidence suggesting Mr. Johnson travelled between his apartment and downtown to conduct drug transactions. And unlike the affidavit in *Howard*, the affidavit reported no suspected drug use or trafficking activity in or near the Allendorf apartment. Likewise, the affidavit included no evidence of drugs recovered or seen near the apartment, such as in cases where police discover discarded drugs by conducting "trash pulls," which can contribute to the required nexus. *See Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37

11

N.E.3d 123, at ¶ 18-19; *State v. Martin*, 2021-Ohio-2599, 175 N.E.3d 1004, ¶ 23-24 (1st Dist.); *State v. Lackey*, 1st Dist. Hamilton No. C-230025, 2023-Ohio-3720, ¶ 16-17. Finally, the affiant did not assert that Mr. Johnson's cell phone was a target of the search, and the state does not argue on appeal that his use of the phone supported the magistrate's probable cause determination. On such an affidavit plainly lacking a nexus between Mr. Johnson's drug trafficking activity and his residence, we cannot say a substantial basis existed for the magistrate to find probable cause "that the specific 'things' to be searched for and seized [were] located on the property to which entry [was] sought." *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). Therefore, we conclude the search warrant was issued in violation of the Fourth Amendment to the U.S. Constitution.

{¶22} Of course, "[t]he question whether the evidence seized in violation of the Fourth Amendment should be excluded is a separate question from whether the Fourth Amendment was violated." *Castagnola* at ¶ 92, citing *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Generally, evidence seized in violation of the Fourth Amendment is subject to the exclusionary rule, meaning the remedy is suppression. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Herring v. United States*, 555 U.S. 135, 139-140, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). However, "[w]hen police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." *Herring* at 142, quoting *Leon* at 922. Nonetheless, we need not consider whether this exception to the exclusionary rule, known as the good faith exception, applies here because the state never raised it at the trial level or on appeal, and the trial court likewise did not address

it. Therefore, the exclusionary rule applies, and the trial court's judgment denying suppression of evidence obtained in violation of the Fourth Amendment—the drugs, paraphernalia, and firearm recovered from the illegal search of the Allendorf apartment—was in error.

{¶23} Accordingly, we sustain Mr. Johnson's fourth assignment of error and reverse the judgment of the trial court regarding his motion to suppress. His convictions for having a weapon under disability and drug trafficking are reversed.

III.

{¶24} Mr. Johnson next argues that his convictions were not supported by sufficient evidence and that they were against the manifest weight of the evidence. Although the trial court's error regarding the motion to suppress results in reversal of Mr. Johnson's convictions on counts one, two, and four, we still must consider his sufficiency argument regarding all of the convictions he appeals. *See State v. Gideon,* 165 Ohio St.3d 142, 2020-Ohio-5635, 176 N.E.3d 706, ¶ 27 (sufficiency argument not mooted by reversal on other grounds because insufficiency would lead to a double jeopardy bar on a retrial). We consider his sufficiency argument regarding all appealed counts before proceeding on his manifest weight and Evid.R. 612 challenges regarding only his conviction for failure to comply (count six).

A.

{¶25} When assessing whether a conviction is sufficiently supported by the evidence, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks,* 61 Ohio St.3d

259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. And " '[w]here reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the factfinder.' " (Emphasis deleted.) *State v. Shabazz,* 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 20, quoting *Jenks* at 279.

**{¶26}** Mr. Johnson claims his convictions for having weapons under disability and drug trafficking were unsupported by the evidence because mere access to the weapon and drugs was not enough to show he constructively possessed them and had knowledge of the trafficking operation. But the cases he cites are unpersuasive because here, the evidence strongly suggested Mr. Johnson lived in the Allendorf apartment alone, having full control and dominion over its contents, including the firearm, drugs, and drug instruments. And the fact female DNA was found on the firearm does not negate its presence in his bedroom dresser. Construed most favorably to the state, the evidence linking Mr. Johnson to the apartment, including officers' surveillance, their interview of the neighbor, the utility bill, and his birth certificate, sufficiently established his constructive possession of its contents and knowledge of the apparent trafficking operation.

**{¶27}** To be guilty of failure to comply in violation of R.C. 2921.331(B), he must have "operate[d] a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring [his] motor vehicle to a stop." R.C. 2921.331(B). And because he was convicted of this crime as a third-degree felony, rather than a lower felony or misdemeanor, he must have "caused

a substantial risk of serious physical harm to persons or property" when fleeing from police. R.C. 2921.331(C)(5)(a)(ii).

{¶28} At trial, one of the officers who attempted to arrest Mr. Johnson testified that the cruiser's lights were activated before he drove away and that the BWC video, shown in court, supported this assertion. Further, the officer testified that the dash-cam recording would start 30 seconds prior to activation, which, based on the dash-cam footage shown in court, would mean the lights were activated just before Mr. Johnson entered his vehicle. Finally, video evidence showed him speeding away from police in a residential area populated with many other cars and drivers. We hold this evidence sufficient for a reasonable trier of fact to conclude he violated the statute and that he caused a substantial risk to persons or property in doing so. We therefore overrule his assignment of error on sufficiency regarding all appealed counts.

B.

{¶29} Separately, in reviewing whether the conviction runs counter to the manifest weight of the evidence, we sit as a "thirteenth juror," reviewing the evidence, the credibility of witnesses, and the entire record. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). However, we can reverse the judgment only if "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). We consider his manifest weight argument only for count six because the assignment of error is mooted by the motion to suppress error for counts one, two, and four. *See Gideon*, 165 Ohio St.3d 142, 2020-Ohio-5635, 176 N.E.3d 706, at ¶ 26, citing *Culver v. Warren*, 84 Ohio App. 373, 393, 83 N.E.2d 82 (7th Dist.1948).

{¶30} Weighing all the relevant evidence, we conclude Mr. Johnson's conviction for failure to comply as a third-degree felony was not against the manifest weight of the evidence. Despite his seemingly accurate claim that the cruiser's sirens were not activated until his vehicle had already turned the corner and fled from police, substantial evidence shows the cruiser's overhead lights were activated prior to his flight and that he knowingly sped away to evade arrest. Combined with the fact that this took place in a residential area crowded with other vehicles, we conclude the jury did not lose its way in concluding he violated the statute and caused a substantial risk of serious physical harm while doing so. Therefore, we overrule his assignment of error regarding manifest weight on count six only while holding it moot regarding counts one, two, and four.

C.

{¶31} Finally, Mr. Johnson argues the trial court erred pursuant to Evid.R. 612 in not allowing defense counsel to review notes held and viewed by Officer Hunter during his testimony. The rule states, in part:

> If a witness uses a writing to refresh memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. The adverse party is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so

16

related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal.

Evid.R. 612.

**{¶32}** The clear text of the rule allows the trial court to withhold notes from adverse counsel when they do not relate to the witness's testimony, but it also mandates preservation of any excised notes upon adverse counsel's request. *Id.* In doing so, the rule provides for meaningful appellate review of the trial court's decision to withhold notes potentially used to refresh a witness's recollection.

**{¶33}** After defense counsel's initial request to inspect the notes, the trial court here *sua sponte* examined them and determined that *all* the notes were unrelated to the officer's testimony. Therefore, the court essentially "excise[d]" or "withheld" all the notes, and it had nothing left to deliver to defense counsel for inspection. But it clearly erred in refusing to preserve the notes for appeal, over Mr. Johnson's objection and request to proffer. We are thus left without any ability to determine whether the trial court abused its discretion in determining that all the notes were unrelated to the officer's testimony and thus appropriately withheld from defense counsel's inspection. The trial court had no discretion over whether to preserve the excised notes for appeal, and it therefore erred under Evid.R. 612 in failing to do so. *See Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 39 ("[C]ourts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule.").

**{¶34}** Even so, such evidentiary errors are subject to harmless error review under Crim.R. 52(A), which "affords appellate courts limited power to correct errors

17

that occurred during the trial court proceeding." *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 9; *see State v. Benson*, 1st Dist. Hamilton No. C-180128, 2019-Ohio-3255, ¶ 22-24. "Under that rule, the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." (Emphasis deleted.) *Perry* at ¶ 15, citing *United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In determining whether the error was harmless, "an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 33.

{¶35} Naturally, our review is complicated by the error itself: we do not know what the notes contained, so we cannot assess their effect on Officer Hunter's testimony. However, because we determine the suppression issue controls regarding counts one, two, and four, we need only consider the error's effect on Mr. Johnson's failure to comply conviction. And the state introduced significant evidence, apart from Officer Hunter's testimony, that Mr. Johnson failed to comply with officers' visual signals, including testimony from other officers and BWC video to back it up. Therefore, we conclude that the trial court's Evid.R. 612 error did not affect Mr. Johnson's failure to comply conviction, and thus it was harmless with respect to that count. We accordingly overrule his third assignment of error insofar as it relates to the failure to comply conviction while not addressing the error regarding counts one, two, and four.

\* \* \*

18

**{¶36}** In sum, we conclude the trial court erred in denying the motion to suppress the evidence recovered from the Allendorf apartment because the underlying affidavit did not provide a substantial basis for the magistrate to conclude that there was probable cause. We sustain his fourth assignment of error and reverse the trial court's judgment denying the motion to suppress, and Mr. Johnson's convictions for having weapons while under disability, in violation of R.C. 2923.13(A)(3) (count one) and trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(2) (counts two and four) are therefore reversed. We note for the trial court's purposes on remand that our holding on the suppression motion also applies to counts three and five, which were merged at sentencing.

**{¶37}** We further conclude that his convictions were supported by sufficient evidence and that his conviction for failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B) (count six), was not against the manifest weight of the evidence. We affirm the judgment of the trial court regarding that conviction only and overrule his first and second assignments of error. Finally, we hold that although the trial court failed to preserve Officer Hunter's excised notes as required by Evid.R. 612, the error was harmless regarding count six and is moot regarding counts one, two, and four, and we overrule his third assignment of error accordingly. We remand this cause with instructions to the trial court to grant the motion to suppress and for further proceedings consistent with the law and this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

**CROUSE, J.,** concurs.
**WINKLER, J.,** concurs in part and dissents in part.

**WINKLER, J.**, concurring in part and dissenting in part.

{¶38} Because I conclude that the affidavit provides a sufficient nexus between Johnson's Allendorf residence and his drug transactions with confidential informants that were verified by police officers, I respectfully dissent. Consequently, I would overrule the four assignments of error and affirm the trial court's denial of the motion to suppress and Johnson's convictions. I concur with the majority in all other respects.

{¶39} In order to establish probable cause to issue a search warrant, the supporting affidavit must contain sufficient information to allow a magistrate to draw the conclusion that evidence is likely to be found at the place to be searched. *Lang*, 1st Dist. Hamilton No. C-220360, 2023-Ohio-2026, at ¶ 12; *Martin*, 2021-Ohio-2599, 175 N.E.3d 1004, at ¶ 11. Probable cause means less evidence than would justify condemnation. *George*, 45 Ohio St.3d at 329, 544 N.E.2d 640. There is probable cause where a reasonably prudent person would believe that a fair probability exists that the place to be searched contains evidence of a crime. *See id.* at paragraph one of the syllabus; *Lang* at ¶ 12. "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " (Emphasis deleted.) *George* at 329, quoting *Gates*, 462 U.S. at 235, 103 S.Ct. 2317, 76 L.Ed.2d 527. Consequently, "probable cause 'is not a high bar.' " *Lang* at ¶ 12, quoting *State v. Hobbs*, 4th Dist. Adams No. 17CA1054, 2018-Ohio-4059, ¶ 35.

{¶40} A reviewing court, which includes a trial court ruling on a motion to suppress as well as an appellate court, must give great deference to that determination. *See George* at 329-330; *Lang* at ¶ 13. "[A]fter-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of de novo review." *George* at 329,

quoting *Gates* at 236. Our duty is to ensure that the issuing magistrate had a substantial basis for concluding that probable cause existed. *See George* at paragraph two of the syllabus; *State v. German*, 1st Dist. Hamilton No. C-040263, 2005-Ohio-527, ¶ 12. Doubtful or marginal cases should be resolved in favor of upholding the warrant. *George* at paragraph two of the syllabus; *Lang* at ¶ 13.

{¶41} In some cases, courts have "permitted judges to infer a fair probability of finding evidence in a residence even though the affidavit did not state that such evidence had been observed directly." *United States v. Brown*, 828 F.3d 375, 383 (6th Cir.2016), citing *United States v. Jones*, 159 F.3d 969, 974-975 (6th Cir.1998). The Sixth Circuit held that "a magistrate issuing a search warrant 'may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking.' " *United States v. Coleman*, 923 F.3d 450, 457 (6th Cir.2019), quoting *United States v. Williams*, 544 F.3d 683, 687 (6th Cir.2008). To the Sixth Circuit, this inference "reflects the reality that, 'in the case of drug dealers, evidence is likely to be found where the dealers live.' " *Coleman* at 457, quoting *Jones* at 975.

{¶42} However, the Sixth Circuit has vacillated on whether it approves or disapproves of this inference. At best, the Sixth Circuit's "jurisprudence is not entirely clear as to whether a defendant's status as a drug dealer, standing alone, is sufficient to establish a nexus between his residence and drug activities." *United States v. Badley*, 6th Cir. No. 22-3789, 2023 U.S. App. LEXIS 33031, 12 (Dec. 12, 2023), citing *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir.2018) (collecting cases holding evidence of drug trafficking by an individual supplies a sufficient nexus to search that individual's residence and cases requiring independent evidence tying an individual's residence to drug activity). However, we need not resolve this issue because in this

case, the supporting affidavit established a sufficient nexus between Johnson's residence and his illegal activities. *See Lang*, 1st Dist. Hamilton No. C-220360, 2023-Ohio-2026, at ¶ 21 (holding a sufficient nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence), quoting *State v. Young*, 10th Dist. Franklin No. 18AP-845, 2019-Ohio-4639, ¶ 18, quoting *United States v. Gunter*, 266 Fed.Appx. 415, 419 (6th Cir.2008).

**{¶43}** Police databases suggested Johnson used a particular apartment on Allendorf Drive. The affidavit described two connections tying Johnson's criminal activities to the Allendorf Drive address: the cell phone number used to arrange the controlled drug buys was tracked to near that address and the vehicle used in one of the controlled drug buys was seen at that address. Police officers conducted two controlled drug buys from Johnson in which confidential informants called Johnson at a specified cell phone number and arranged the drug transactions. After the second controlled drug buy, the police officers requested a "ping" on the cell phone number used in both buys to contact Johnson. The "ping" placed the cell phone with that number within a 200-to-250-meter radius of the Allendorf address for extended periods in both day and night. These two facts establish a fair probability that the phone Johnson used to arrange drug transactions—itself evidence of criminal activity and likely containing other incriminating evidence—was at the Allendorf Drive address associated with Johnson.

**{¶44}** Also connecting Johnson's residence to his criminal activities was the presence of one of the cars he used. During the second controlled drug buy, Johnson was inside a blue Hyundai Elantra when he met with the confidential informant. The

police surveilling the controlled drug buy recorded the Elantra's license plate. When conducting surveillance on Johnson's Allendorf address, police officers noticed the same blue Hyundai Elantra with the same license plate parked outside the apartment complex. Further surveillance showed Johnson exited from the apartment complex's courtyard, entered that blue Elantra, and left the area. The fact that Johnson had conducted a drug transaction in that blue Elantra and that car was subsequently observed at Johnson's Allendorf Drive residence, coupled with the cell phone that he used to arrange those drug transactions was nearby for extended hours, lead to a reasonable inference that Johnson may store drugs, proceeds, and other items related to his illegal activities at the Allendorf Drive address and that evidence of those transactions may be inside the residence.

{¶45} Thus, the affidavit established that Johnson was undeniably an active drug trafficker, that he resided at the Allendorf Drive address, that the cell phone used to arrange the two controlled drug buys was present for extended periods of time near the Allendorf Drive address, the same car Johnson utilized in one of the controlled drug buys was observed at the Allendorf Drive address, and Johnson was seen leaving the residence via that car. On the day of the search, police officers observed Johnson leave from the door of the specific building in the apartment complex that housed the apartment associated with Johnson. Prior to the search, a neighbor in that building confirmed the specific apartment belonged to Johnson. Based on that evidence, the averring officer concluded, based on his experience in narcotics investigations, that there was evidence of drug trafficking at the Allendorf Drive address. The issuing magistrate agreed and issued the search warrant. These facts established a sufficient nexus between Johnson's criminal activities and the Allendorf Drive address searched.

*See Lang*, 1st Dist. Hamilton No. C-220360, 2023-Ohio-2026, at ¶ 23 (sufficient nexus where affidavit established police surveilled the defendant leave his residence, engage in confirmed drug transactions, and then return to the residence); *see also Coleman,* 923 F.3d at 457 (sufficient nexus where affidavit established that the defendant was an active drug trafficker, that the address searched was his home, that both of his vehicles were regularly parked there, and that investigators observed him drive directly from the address searched to the site of the most recent buy).

{¶46} Although the officer testified to Johnson coming and going from his residence to the drug transactions, the affidavit did not include a statement that Johnson was observed doing so via electronic means. *Compare Lang* at ¶ 4, 23 (using a GPS monitoring device to observe the defendant's movements). However, this is not fatal to the warrant. As described above, the affidavit provided the magistrate with a substantial basis for a reasonably prudent person to conclude that a fair probability existed that Johnson's Allendorf Drive address contained evidence of a crime. *See George*, 45 Ohio St.3d at 330, 544 N.E.2d 640.

{¶47} Consequently, I would overrule the assignments of error, affirm the trial court's denial of his motion to suppress, and affirm Johnson's convictions. Thus, I respectfully dissent in part. I concur in all other respects.


Please note:

The court has recorded its entry on the date of the release of this opinion.